PROCTOR & COLLIER CO. v. MAHIN et al.

(Circuit Court, N. D. Illinois, N. D.  March 2, 1899.)

1. PRINCIPAL AND AGENT—RIGHT OF AGENT TO DRAW AWAY PRINCIPAL'S CUSTOMERS.

An agent who has ceased to represent his principal and gone into the same line of business for himself may lawfully solicit the future business of his former principal's customers.

2. SAME—INJUNCTION AGAINST ADVICE TO BREAK CONTRACT.

Although such agent has no right to advise such customers to break their existing contracts with his former principal, yet his doing so cannot be restrained by injunction, since the remedy at law is ample.

Suit for injunction and accounting by the Proctor & Collier Company against John Lee Mahin and others.

A. A. Ferris, for complainant.
Walker & Davis, for defendants.

GROSSCUP, District Judge.   The bill is to restrain defendant and his associates from using, among other things, a certain rate book and scrap book alleged to belong to the complainant, and to have been taken away by Mahin; also from enticing away the office men and clerks formerly in the employ of the complainant, and from inducing customers of the complainant to cancel their contracts.

The complainant is a corporation organized under the laws of Ohio, with business headquarters at Cincinnati.   Its business is in the line of go-between between men or firms accustomed to advertise and the publishers.   In the evolution of advertising, it has come about that advertisers can obtain better what they wish through experienced go-betweens than if they went directly to the publishers.   The go-between has, indeed, many opportunities to be helpful.   He can, by reason of the magnitude of his business as an entirety, obtain better rates than an individual advertiser; he is in a position to know what periodicals will with greater likelihood reach the class of people interested in the particular business of the advertiser; and he can, better than the advertiser himself, hit upon forms, illustrations, and language that will most strikingly set forth the advertiser's business, and most surely attract the attention of the readers.   The business has come, it seems, to be a fixed one.   The advertiser stands to the agent or go-between in the relation of a client paying for expert services.   The compensation usually charged is 10 per cent. of the contract price paid to the publisher.   The business connection between complainant and defendant Mahin began in the latter part of December, 1896.   Prior to that time, complainant had no agency in Chicago.   Mahin had been the agent here of the rival firm of J. Walter Thompson Company.   Under the contract between them, Mahin was to have charge of the Chicago office and territory, including the Northwestern country, for which he was to receive one-half of the profits of the business coming through the Chicago agency.   He brought to the complainant from the J. Walter Thompson Company a large part of his clientele, to which he added during the term of the connection other clients.   The customers advertising through the Chicago agency were, both at first and

throughout the contract, almost entirely the personal following of Mahin.

In December, 1898, the connection between complainant and Mahin was dissolved. The dissolution was consented to by both parties, and was within the legal right of each. Neither took advantage of the other in that respect. The dissolution left Mahin at liberty to set up in business for himself. He had, without question, the right to thereafter avail himself of every advantage his previous experience had brought to him. He had the right to promote his interest wherever the field lay open. It is charged that he took with him the office help of the complainant. The evidence of this charge lies in a single circumstance, viz. that the men and clerks left at one time, and together joined Mahin's new business. But each has submitted his affidavit denying explicitly that there was any solicitation upon the part of Mahin; and, bearing in mind that Mahin had been the personality behind complainant's Chicago business, that the men had been his employés, in personal contact with him alone, that the business was, indeed, substantially his business, the affidavits do not appear strained or untrue. I can find no sufficient evidence upon which to base an order for complainant in this respect.

It appears that during the connection between complainant and Mahin there were kept by the latter in a book previously purchased by him, and used during the period of his employment with the J. Walter Thompson Company, certain tabulated memoranda relating to the rates charged by publishers. It also appears that during this connection a scrap book was kept by Mahin, in which was gathered information pertinent to the business as it went along. The complainant insists that the information gathered in these two books, though written by Mahin into books which, as blank books, belonged to him, is, in law, the property of the complainant. On the contrary, Mahin insists that the books, as books, are his, that the data in the scrap book, except such as had been cut out and delivered to complainant at the Chicago agency, had no relation to the complainant's business; that the data in the memorandum book were simply a convenient tabulation of what the complainant possesses in another equally convenient form; and that none of the data is, in any sense, the exclusive property of the complainant. Whether any of the information gathered into the scrap book is exclusively complainant's can only be ascertained by a minute examination. Whether the information gathered into the memorandum book is in the nature of a business secret, which an agent is not permitted to carry off, depends for determination, also, upon such an examination. Mahin offers to surrender everything that may be found to belong to complainant. This part of the case, therefore, I will refer to a master to report what portion, if any, of the information gathered into these books belongs exclusively to the complainant.

Complainant charges that Mahin has enticed away its clients, and has been procuring them to cancel contracts with the complainant not yet fully performed. As to the first part of this charge, I hold it was within Mahin's right, after the connection ceased, to not only receive, but to solicit, the patronage of these clients. Whether he could right-

fully advise them to break existing contracts with complainant is another question. The contracts entered into for advertisement were between the advertisers and complainant, and usually ran for six or eight months. The correlative contract with the publisher was between complainant and the publisher. The advertiser and publisher only came together through their respective contracts with complainant. The complainant's work for his clients was done chiefly in obtaining rates and in creating the style and character of the advertisements, and was performed almost wholly, in the nature of things, at the beginning of the advertiser's contract period. His compensation, however, came periodically throughout the whole period of the contract. He thus earned at the beginning what he was only paid for as the contract proceeded. The cancellation of such a contract before the period elapsed, involving, as it did, the stoppage of further pay, necessarily injured the complainant. Though the publisher might not hold him, it involved work done for which no pay was coming. Though the showing of this preliminary hearing is necessarily incomplete, it seems probable to me that Mahin went beyond his right in advising the cancellation of these contracts. But I cannot see why, in that event, an adequate remedy at law will not lie against him.

The argument is that Mahin's so-called "wrong" relates to the cancellation of different contracts made with complainant by different clients, and that, therefore, if remitted to the law courts, complainant would be compelled to bring as many suits as there were contracts, in other words, that this bill will lie to prevent a multiplicity of suits. But is the contention sound? It depends on the basis on which any action lies against Mahin. Of course, if Mahin be liable, as a stranger only, for malicious intermeddling between complainant and its clients to the injury of the former, a separate suit for each instance would be necessary. But there is nothing in the showing before me that discloses malice; indeed, it is admitted that, were Mahin a stranger, the acts complained of would be within his right under the law. Whatever action, then, complainant may have against Mahin must be grounded upon the precedent relationship between them. The wrong is his wrong,—not as Mahin a stranger, but as Mahin an agent, or party to a contract. The right of action, though relating to different clients, grows out of a contract common to all,—the contract of agency. In such a case, a suit at law, if it lies at all, will lie for the whole wrong; each instance of duty violated being provable in the one common action. There need therefore be no multiplicity of suits.

This bill is not analogous to those in which agents have been restrained from disclosing or making use of information obtained by virtue of their agency. The personality of the clients was not disclosed to Mahin by complainant. The clients were brought to complainant by Mahin. It may be an unfair advantage that Mahin is taking, but it is not an advantage to which he obtained access only through the avenues of his agency. It is, indeed, the character of advantage that rivals in business everywhere avail themselves of. In exercising my discretion to deny an injunction, I have been influenced by the consideration that an injunction issued now would greatly

injure the defendant Mahin in his independent venture in business, while conferring little benefit upon the complainant. Few of the Chicago agency clients yet remain with complainant, and defendant Mahin promised at the hearing that no effort would be made to procure other cancellations of contracts. I am impressed with the belief that whatever has been done in that direction heretofore by Mahin was under a mistaken belief of right, and was not under the exercise of malice towards the complainant, or with a purpose to unfairly treat him. On the whole, I think the ends of justice will be best subserved by remitting the complainant to his rights at law. It is not at all clear from the showing made by the affidavits that the complainant has not provoked every step taken by Mahin. If, as is insisted, complainant sought, after Mahin had obtained these clients for the Chicago office, to divert them from Mahin's influence, and bring them, or some of them, into a relationship outside of Mahin's right of participation in the profits, one's sense of fair play justifies his dissolution of the connection, and his subsequent steps towards keeping what he, in fact, had built up within that connection.

Upon the whole case, the injunction will for the present be denied, and the case go to a master to report respecting the character of the books and the rights of the parties relating thereto.